## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| SHERYL D. GRAVES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | 1:11-cv-249-SEB-DKL |
| | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

### Entry Discussing Complaint for Judicial Review

Sheryl D. Graves ("Graves") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq.*

For the reasons explained in this Entry, the Commissioner's decision must be **remanded for further proceedings.**

### I.   Background

Graves applied for SSI and DIB on January 24, 2008, alleging an onset date of August 15, 2006. Her applications were denied initially and upon reconsideration. Her request for a hearing before an Administrative Law Judge ("ALJ") was granted, and a hearing was conducted by video on January 26, 2010. Graves was present, accompanied by her attorney. Medical and other records were introduced into evidence. Graves and a vocational expert testified. The ALJ denied Graves' applications on April 27, 2010. On January 11, 2011, the Appeals Council denied Graves' request for review, making the ALJ's decision final. *See Getch v. Astrue,* 539 F.3d 473, 480 (7th Cir. 2008). This action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Graves met the insured status requirements of the Act through September 30, 2007; (2) Graves had not engaged in substantial gainful activity since August 15, 2006, the alleged onset date; (3) Graves had the following severe impairments: degenerative disc disease of the lumbar spine and asthma; (4) Graves did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) Graves had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b); specifically she could lift and/or carry up to 20 pounds occasionally, 10 pounds frequently; she could stand for 5 hours in an 8 hour workday, walk for 4 hours in an 8 hour workday, and sit for 6 hours in an 8 hour workday; she could push and pull up to 30 pounds; she could occasionally stoop and bend; she was unable to climb ladders, ropes and scaffolds, or perform work that included anything more than concentrated exposure to unprotected heights and moving machinery; she was unable to perform work that included anything more that moderate exposure to indoor temperature extremes, indoor dust, fumes and airborne irritants, and indoor excess humidity; (6) Graves was unable to perform any past relevant work; (7) Graves was born on May 11, 1963, and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date; (8) Graves had a limited education and was able to communicate in English; (9) transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant was "not disabled," whether or not she had transferable skills; and (10) considering Graves' age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that she could perform. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Graves had not been under a "disability," as defined in the Act, from August 15, 2006, through the date of the ALJ's decision.

## II.   Discussion

### A.   Applicable Law

To be eligible for DIB and SSI, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. §§ 416.908; 404.1508.

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005).

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or  combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520, 416.920. A finding of disability requires an affirmative answer at either step three or step five.

*Id.* The claimant bears the burden of proof at steps one through four, and at step five the burden shifts to the Commissioner. *Id.* at 352.

The task a court faces in a case such as this is not to make a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

## B.   Analysis

In this case, the ALJ concluded that although Graves had severe impairments consisting of degenerative disc disease of the lumbar spine and asthma, there were a significant number of light exertional jobs in the national economy that she could perform.

Graves argues that the ALJ's decision is not supported by substantial evidence. More specifically, she contends that the ALJ 1) erred at step three when he determined that Graves' impairments did not meet or equal Listing 12.04 (affective disorders), 2) rendered a patently erroneous credibility determination, and 3) erred at step five because his RFC assessment was not supported by substantial evidence.

As to Graves' first claim of error, she has the burden of showing that her impairments met or medically equaled a listing. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). She must show that her impairments "satisfy all of the various criteria specified in the listing." *Id.* Graves points to a number of findings in the

psychological evaluation of June 18, 2008, performed by Dr. Dobbs, which correspond with the requirements of Listing 12.04A and B. *See* (R. at. 248-254). Graves argues that the ALJ improperly rejected the evidence from Dr. Dobbs. The Commissioner contends that the ALJ reasonably relied on the opinion of state agency psychologist Dr. Gange.

The ALJ did not discuss Listing 12.04 because he concluded at step two that Graves' mental impairment was not severe. (R. at 24-26). When evaluating Graves' mental impairment, the ALJ gave controlling weight to the June 18, 2008, opinion of non-examining state agency consultant Dr. Gange, Ph.D. (R. at 26, 32). The only examining evidence relative to Graves' mental impairment is that of Dr. Dobbs, a psychologist who evaluated Graves on June 18, 2008. (R. at 248-54). Dr. Dobbs assessed Graves as having a Global Assessment of Functioning ("GAF") score of 49, (R. at 254), which indicates serious symptoms. The ALJ stated that he was "satisfied that Dr. Gange fully considered this Global Assessment of Functioning score prior [to] deriving his medical assessment on June 18, 2008." (R. at 26). Dr. Dobb's examination, however, was not performed until June 18, 2008, and Dr. Gange did not refer to the GAF score or any other specific findings made by Dr. Dobbs. It is extremely unlikely that a report from an examination conducted in a private office on June 18, 2008, could be made part of a medical file at the Social Security Administration in time to be reviewed by another psychologist on that same date. Under these circumstances, the ALJ's conclusion that he was satisfied that Dr. Gange considered the GAF score is not supported by the record.

Graves argues that the ALJ should have summoned a medical expert to testify as to whether Graves' combined impairments medically equaled a Listed impairment. As pointed out by the Commissioner, an ALJ is required to obtain an updated opinion of a medical expert when "additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." SSR 96-6p; 1996 WL 374180, at *4 (July 2, 1996). In light of the apparent fact that the only psychological examination of record was not reviewed by the state agency psychologists, the ALJ should have obtained an updated opinion as to the severity of the mental impairment and as to medical equivalence. *Id.*

In addition, the ALJ concluded that Dr. Dobbs' GAF assessment "was invariably based, in part, on the subjective allegations and representations of the claimant made during the evaluation  . . .  [and] the claimant's subjective allegations are not entirely consistent with the objective evidence of record." (R. at 26). Although, as pointed out by the Commissioner, it is true that an ALJ is not required to determine the extent of a claimant's disability based entirely on her GAF score, *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010), nowhere in the Social Security regulations or case law does it permit an ALJ to ignore a GAF score based on

his own lay opinion that it must have been improperly based on subjective allegations. Indeed, Dr. Dobbs conducted a mental status examination with testing, one that led to his opinion concerning Graves' GAF score. Absent other evidence disapproving of Dr. Dobbs' methods or results, the ALJ is not qualified to discount the GAF score on that basis. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010)(ALJ cannot "brush aside" physician's conclusions only on the ground that they seemed to be "based solely on the claimant's subjective complaints"); *Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003) (ALJ may not "play doctor" by making an independent medical conclusion in assessing mental impairment).

The ALJ's bases for rejecting the opinion and evidence of examining psychologist Dr. Dobbs and for giving controlling weight to the opinion of the state agency psychologists are not supported by substantial evidence. Therefore, the ALJ's decision that Graves' mental impairments were not severe and his implication that such impairments did not satisfy a listing must be reconsidered on remand.

Graves's second claim of error is that the ALJ's credibility determination is erroneous. As a threshold matter, the reason courts give deference to the credibility findings of ALJs is because the ALJ "is in the best position to determine a witness's truthfulness and forthrightness." *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). In this case, however, the ALJ asked only a few questions of Graves during the hearing. He reviewed her work history with her and asked her if she was taking any prescription medications. (R. at 43-46).He then directed Graves' attorney to provide a summary of the evidence rather than conduct a question-answer presentation with Graves. (R. at 47). Graves' attorney, rather than Graves herself, testified about her conditions, her pain and other symptoms, and her functional abilities. (R. at 47-51). Although the ALJ asked Graves if she agreed with what her attorney had said and whether she wanted to add anything, the ALJ did not permit the claimant to describe her own experiences. The court finds this a lost opportunity to evaluate the claimant's credibility, and indeed, severely weakens the ALJ's determination in that regard.

The ALJ's credibility finding includes the boilerplate template that the Seventh Circuit has often criticized: "[T]he claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. at 28). Rather than acknowledge this case law, the Commissioner inexplicably argues that the "ALJ reasonably found that Plaintiff's allegations of disabling limitations were not credible to the extent they were inconsistent with the ALJ's RFC finding." (Commissioner's Brief at p. 16). The Seventh Circuit finds this language "unhelpful" and "meaningless" and a backward view in that it "'implies that the ability to work is determined first and is then used to determine the claimant's credibility.'" *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012)(quoting *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012)). The court acknowledges that the ALJ did

consider a number of factors in explaining his credibility determination, but the court agrees with Graves that much of that analysis is not supported by substantial evidence.

The ALJ noted that Graves alleged that she was barely able to do anything for herself, that her boyfriend dressed her, that she could only walk about 5 feet without experiencing back pain, and that she could only stand for 20 minutes without pain. (R. at 27). The ALJ concluded that Graves' complaints of severe pain were not consistent with the evidence of record. *Id.* In support of this conclusion, the ALJ noted that Graves told Dr. Dobbs that she had difficulty lifting her hands over her head, but that Dr. Croffie, a consulting examining physician, indicated that Graves had full range of motion of her shoulders. (R. at 27-28). These two circumstances, however, are not mutually exclusive. Graves easily could have full range of motion in the shoulders and yet still have pain when lifting her hands over her head. This reasoning does not support a negative credibility determination.

In further support of his credibility determination, the ALJ noted that on April 25, 2008, treating physician Dr. Julie Vannerson indicated that Graves' "pain [is] out of proportion to xray findings and c/o [complains of] nerve impingement symptoms." (R. at 28, 239). The ALJ cited this remark no less than four times in his decision and inferred that Dr. Vannerson's remark reflected poorly on Graves' credibility. Dr. Vannerson's findings, however, prompted Dr. Vannerson to order a spine lumbar MRI because of Graves' "severe lumbar pain w/ radicular symptoms." (R. at 239). Contrary to doubting Graves' credibility, it appears that Dr. Vannerson was noting that the xrays had not revealed any explanation to that point, so further testing was needed in light of Graves' complaints of symptoms that indicated nerve impingement.

The MRI results of June 5, 2008, were "L4-L5 symmetric disc bulge, severe facet and ligamentum flavum hypertrophy resulting in severe spinal canal stenosis and mild bilateral neural foraminal stenosis." (R. at 241). On July 1, 2008, a neurosurgery consult was recommended "for management suggestions for severe spinal stenosis due to bulging lumbar disc." (R. at 277). The ALJ's adverse credibility inference taken from the note that Graves' pain was "out of proportion to xray findings" further failed to take into consideration Dr. Vannerson's subsequent notation on July 1, 2008, that she reviewed with Graves the MRI results showing "severe spinal stenosis at L4-5 *corresponding to her sx* [symptoms]." (R. at 277)(emphasis added).

In addition, as part of his credibility determination, the ALJ reasoned that Graves' course of treatment pursued was "not consistent with the level of severity found in her subjective allegations." (R. at 28). "Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical

care before drawing a negative inference." *Shauger*, 675 F.3d at 696. Graves was not asked why she did not seek more frequent treatment for her impairments, nor did the ALJ acknowledge the medical charts that indicated she could not afford copays. *See* (R. at 240) (hypertension was "out of control but hasn't had money for copays."). Moreover, the course of treatment prescribed by treating physicians included narcotic pain medications and physical therapy, with a possibility of injections and/or surgery. The ALJ's inference based on any lack of treatment was erroneous.

The ALJ also rejected Graves' reports that she was unable to walk more than 5 feet without experiencing back pain because the record established that her gait was normal. (R. at 28). Absent any medical opinion offering that interpretation, the ALJ has improperly "played doctor" by inferring that a normal gait implies an ability to walk more than 5 feet without pain. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005)("An ALJ may not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record."). There simply is no post-MRI evidence that supports the ALJ's finding that Graves could stand and/or walk 6 hours in an 8 hour work day.

The Commissioner points to the fact that the ALJ also noted that Graves attributed her back pain to an accident she had in 1981, but she had been able to work through at least August 15, 2006. (R. at 28). The ALJ drew an adverse inference from the fact that Graves had been employed at one point, but such an inference implies that Graves' level of pain remained constant for that entire period of time. The ALJ failed to account for the fact that Graves has reported that her back pain has been worse since 2006, which is consistent with the medical records. *See* (R. at 248). Indeed, a neurologist noted that the pain began after Graves fell out of a tree and it had "progressively worsened over time." (R. at 276). Any adverse inference based on her past ability to work is not supported by the record.

The ALJ's credibility findings discussed above do not follow logically from nor do they take into account the entire record. The credibility determination must be reconsidered on remand.

As to her third claim of error, Graves argues that the resulting RFC assessment is not supported by substantial evidence. Because the ALJ's credibility determination must be considered when determining Graves' ability to perform work-related tasks, and not vice versa, the unsupported credibility determination requires that the RFC assessment also be reconsidered on remand.

With regard to the ALJ's RFC determination, the ALJ gave "little weight" to the opinion of treating physician Dr. Vannerson that Graves' back pain prevented her from working part time or full time. (R. at 31). The Commissioner is correct in noting that the ultimate decision as to disability is reserved to the Commissioner, and that this was a proper basis on which to reject the physician's conclusion

regarding Graves' ability to work. (R. at 31). *See Clifford v. Apfel,* 227 F.3d 863, 870 (7th Cir. 2000) ("A claimant, however, is not entitled to disability benefits simply because a physician finds that the claimant is 'disabled' or 'unable to work.'"); 20 C.F.R. §§ 404.1527(e) and 416.927(e) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). The ALJ went too far in this regard, however, because the ALJ stated that "the doctor's opinion is neither consistent with, nor supported by, the evidence of record." (R. at 31). In arriving at this conclusion, the ALJ improperly ignored the objective evidence which explained Graves' severe back pain and demonstrated the various unsuccessful attempts to provide relief.

The non-examining state agency physician, Dr. Whitley, completed his assessment on April 22, 2008. (R. at 233). In that assessment, he indicated that there was no treating or examining source statement regarding Graves' physical capacities in the file at that time. (R. at 232). The MRI results, which provided an explanation for Graves' severe back pain, did not become part of the record until after June 5, 2008, and could not have been considered by Dr. Whitley. Even though state agency physician Dr. Corcoran affirmed Dr. Whitley's decision on June 18, 2008, there is no notation of the MRI results having been viewed after June 5, 2008, and in fact, Dr. Corcoran noted "no change in physical condition reported." (R. at 269). On August 18, 2008, an examining neurosurgeon reported "[m]otor [strength] 5/5 B/L [bilateral] with giveaway weakness after a few seconds due to pain." (R. at 276). The neurosurgeon also noted that the "MRI demonstrates a 10% slip of L4 on L5 with severe central canal stenosis due to ligament hypertrophy and mild bilateral foraminal stenosis." *Id.* None of this evidence was viewed by the state agency physicians. The ALJ's decision to give controlling weight to these state agency opinions in rendering his RFC assessment is not supported by substantial evidence.

The court requires that Aan ALJ build an accurate and logical bridge from the evidence to [his] conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review.@ *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002)(internal quotation omitted). For the reasons set forth above, the court finds that the ALJ failed to build such a bridge and his decision must be remanded for further proceedings.

### III.   Conclusion

For the reasons discussed in this Entry, the ALJ's conclusions are tainted by legal error and not supported by substantial evidence. Accordingly, the court is required to **remand** the case to the ALJ for further consideration. *Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991) (a court may remand the case after passing on its merits and issuing a judgment affirming, modifying, or reversing the Commissioner's decision, a "sentence four" remand).

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**


Date:   09/11/2012

Distribution:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Patrick Harold Mulvany
patrick@mulvanylaw.com

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana